## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Chapter 11 |
| Financial Investments and Real Estate, LLC, | Case No. 22-11150-mdc |
| Debtor. | |

## SECOND AMENDED
## CHAPTER 11 PLAN OF REORGANIZATION

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE SECOND AMENDED PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE SECOND AMENDED PLAN. IF YOU WISH TO OBJECT TO CONFIRMATION OF THE SECOND AMENDED PLAN, YOU MUST DO SO BY [OBJECTION DATE/TIME].**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE SECOND AMENDED PLAN MUST BE RETURNED BY [DEADLINE]. THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS: [DEBTOR'S COUNSEL'S ADDRESS].**

**A HEARING ON THE CONFIRMATION OF THE SECOND AMENDED PLAN IS SCHEDULED FOR [HEARING DATE/TIME] IN COURTROOM No. 2 , SECOND FLOOR AT THE
U.S. BANKRUPTCY COURT, 900 MARKET STREET, ROBERT C. NIX COURTHOUSE PHILADELPHIA, PA.**

Your rights may be affected by this Second Amended Plan. You should consider discussing this document with an attorney.

November 22, 2022
Michael A. Cataldo, Esquire
Gellert Scali Busenkell & Brown, LLC
Suite 1901
8 Penn Center, 1628 JFK Blvd
Philadelphia, Pa 19103

# ARTICLE 1

## HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

**1.1-1.2 Nature of the Debtor's Business.** Financial Investments and Real Estate, LLC ("Debtor" or "LLC"), was formed April 5, 2007, in the Commonwealth of Pennsylvania. The LLC is owned by Managing members, Kathryn Anderson, who owns 90 percent of the business, and Dennis Dicker who owns 10 percent of the business. The managing members are husband and wife. The LLC was created to purchase properties for rental or renovation and sale. The business was doing well and at its peak had owned 10-12 properties. However, with Covid and the pandemic business suffered and currently the LLC owns one property, 1203 S. Melville Street, Philadelphia, Pa. ("Property"). The Chapter 11 petition was filed May 3, 2022, which stayed a scheduled sheriff sale of the Property by the mortgagee scheduled for the same morning pursuant to Philadelphia Court of Common Pleas civil action 21-0101662. Other properties that were owned by the LLC were sold or lost through foreclosure prior to the commencement of this Bankruptcy Case. Debtor have valued the Property per an appraisal as worth $350,000. The schedules were amended to reflect that valuation. The Property has a first position mortgage with US Bank National Association with a balance of $288,372.89 with pre-petition arrears of $75,660.75. There are also judgment liens on the property by three investors. The judgment liens were entered in favor of Monique Moise, Shadonna Charleston and Rasheeda Lawler (collectively, the "Judgment Creditors") on February 19, 2020, in the

aggregate amount of $162,210.23. The three Judgment Creditors have filed individual claims with interest calculated as to the petition filing plus and attorney's fees for the default judgment. Those three claims total $174,375.52 (claims 1-3). The Property was not occupied at the filing of the case. The managing members have contemplated the best use of the Property. The Debtor has decided to pivot and use the property as an Airbnb. The Property has 3 bedrooms and a bath upstairs along with a finished basement with a bedroom and a bath. The Property is located near University City in Philadelphia. Debtor is marketing the property on websites such as apartments.com and Airbnb.com. With this intended use, the Property is projected to generate $3,150 a month. This usage is deemed the best usage based upon its location and proximity to hospitals, medical facilities and the University of Pennsylvania. Dennis Dicker in the initial Plan was to receive $1,000 per month salary to the extent funds are available for his day-to-day management duties. Under the Second Amended Plan that salary has been eliminated. Debtor is also on schedule for repayment terms from Cyndescope on its loan repayment which is reflected within the budget and attached agreement.

**1.3** **Filing of the Debtor's Chapter 11 Case.**

On May 3, 2022, the Debtor filed a voluntary petition for relief under the Bankruptcy Code. It was filed as a Sub V case, but that designation was removed. The Chapter 11 case is a single asset real estate case (1204 S Melville Street, Philadelphia, Pa.) pending in the Bankruptcy Court in Philadelphia, in the Eastern District of Pa. The Initial Debtor Interview (IDI) was held with both owners participating. The Debtor had opened the required Debtor-in -possession bank account, amended the insurance declaration to include

2

the United States Trustee as a Certificate holder and was made aware of the quarterly fee and reporting requirements. The Meeting of Creditors was scheduled and held June 16, 2022. Debtor has filed the required operating reports through September 2022. There was a Motion for Relief by the mortgagee that was denied with expressed conditions for the stay to remain in effect Pursuant to the Order of the Bankruptcy Court dated September 26,2022, which is incorporated by reference. The claims deadline expired July 22, 2022. There were only the four (4) claims filed, all of which are secured claims: the mortgage for the Property and the three judgment debtors. There was a hearing on the Disclosure Statement with Objection by the Judgment Creditors on September 7, 2022. As a result of that hearing Debtor was to provide additional disclosures and amend the Disclosure Statement by September 28, 2022. An Amended Disclosure Statement was filed and the Judgment Creditors objected to that Amended Disclosure Statement. After a hearing on the Amended Disclosure Statement on October 26, 2022, this Second Amended Plan and Second Amended Disclosure Statement were required on or before November 23, 2022.   Plan. There are no filed unsecured claims. Debtor in the Second Amended Plan intends to pay the judgment lien creditors in full with interest calculated at the 6 percent statutory interest over the life of the 63-month plan. This represents a change from the original plan. The Second Amended Plan also intends to pay the post-judgment reasonable attorney fees and costs of incurred by the Judgment Creditors in three equal monthly payments of $4,088.50 in months 61-63 for a total of $12,264.00. Debtor and creditors agree that absent the occurrence of a default under the Plan, the sum of $12,264 constitutes reasonable post-

judgment attorneys' fees and that the Debtor reserves the right to challenge the reasonableness of any claim for additional post-petition attorney fees incurred by the Judgment Creditors after a default under the Plan. Further, if debtor is pre-paid by Cyndescope, in advance of the agreed upon schedule, those funds shall be paid to the Judgment Creditors to be applied first to the last due monthly payments to Judgment Creditors under the Plan until satisfaction of those claims in full. If the prepaid funds received from Cyndescope are insufficient to satisfy the claims of the Judgment Creditors in full, then the Debtor shall continue to make monthly payments when due under the Plan. If the Judgment Creditors are pre-paid then the statutory interest will be re-calculated at the statutory rate for due to the early satisfaction of the claims. There is no co-debtor stay as to any other persons liable to the Judgment Creditors, including but not limited to the members of the LLC. If Debtor defaults on the terms of this Plan, then Judgment Creditors shall have the immediate right to file, and serve upon the Debtor and its counsel, a certification of default ("Certification") stating the basis for the default. Upon the filing of Certification, any stay or injunction pursuant to the Bankruptcy Code and/or Plan, shall terminate and the Judgment Creditors may immediately thereafter be permitted to pursue all rights and remedies under state law against the Debtor .

### 1.4. **Legal Structure and Ownership.**

The Debtor is a limited liability company and is managed by husband and wife, Dennis Dicker, Ten (10) percent and Kathryn Anderson, Ninety (90) percent. Both managing members are involved in the daily operations and decisions.

### 1.5. **Debtor's Assets.**

Schedules A and B list Debtor's assets. Debtor has listed all assets on Schedules A and B. This is a single asset real estate case (SARE). The Property is 1203 South Melville Street, Philadelphia, Pa 19143. The real estate valuation was $350,000. This is an appraised valuation. Debtor also has a loan due from Cyndescope with a balance of approximately $300,000. Cyndescope has agreed to start repayment at $2,500 per month with increases in the monthly amount up to $6,000 in subsequent years which is reflected on the budget attached hereto as Exhibit A, which will assist in funding the Second Amended Plan. Amended Disclosure was required to address creditor questions about Cyndescope and other further information, to adequately inform the creditors to have information to decide on how to vote upon the Second Amended Plan. In response thereto, the Debtor states that, a revised loan agreement was executed with Cyndescope in January 2022 which was a payment plan without interest. The Agreement is attached hereto as Exhibit B. Cyndescope was unable to pay previously due to revenue and cash flow issues caused during the pandemic. Aggressive collection would have been unproductive as driving Cyndescope out of business would not be of benefit to the Debtor and debtor's effort to get paid. Cyndescope has commenced payments in August 2022 under the attached agreement. Cyndescope has not pledged any collateral. Debtor states that the property is being marketed through websites such as, apartments.com and Airbnb.com for tenants. There are no specific healthcare partnerships in place as previously stated in the initial Disclosure Statement. The $3,150 per month rental income was based upon expectation of rents based upon the usage. At a minimum, the Property, located in

University City, can be rented on a room-by-room basis. Pennsylvania law allows 2 persons per room. A charge of $525 per person/room yields $3,150. Respite housing or executive stay offerings could positively affect the income. The budget has been adjusted including the removal of salary to Dennis Dicker.

### 1.6. Debtor's Liabilities.

**Secured Obligation**. Debtor has a mortgage lien on the Property with US Bank National Association. The Mortgage was in arrears at the time of the filing and the Chapter 11 filing stayed a scheduled Sheriff Sale on 1203 South Melville Street, Philadelphia, Pa. Debtor intends to remain current post-petition starting with June 1, 2022, and cure the allowed, pre-petition arrears in equal monthly installments directly to the mortgagee over a sixty (60) month or five (5) year period with the first payment due 30 days after Confirmation. Debtor in the Second Amended Plan intends to pay the judgment lien creditors in full with interest calculated at the 6 percent statutory interest over the life of the 63-month plan. This represents a change from the original plan. The Second Amended Plan also intends to pay the post-judgment reasonable attorney fees and costs of incurred by the Judgment Creditors in three equal monthly payments of $4,088.50 in months 61-63 for a total of $12,264.00. Debtor and creditors agree that absent the occurrence of a default under the Plan, the sum of $12,264 constitutes reasonable post-judgment attorneys' fees and that the Debtor reserves the right to challenge the reasonableness of any claim for additional post-petition attorney fees incurred by the Judgment Creditors after a default under the Plan. Further, if debtor is pre-paid by Cyndescope, in advance of the agreed upon schedule, those

6

funds shall be paid to the Judgment Creditors to be applied first to the last due monthly payments to Judgment Creditors under the Plan until satisfaction of those claims in full. If the prepaid funds received from Cyndescope are insufficient to satisfy the claims of the Judgment Creditors in full, then the Debtor shall continue to make monthly payments when due under the Plan. If the Judgment Creditors are pre-paid then the statutory interest will be re-calculated at the statutory rate for due to the early satisfaction of the claims. There is no co-debtor stay as to any other persons liable to the Judgment Creditors, including but not limited to the members of the LLC. If Debtor defaults on the terms of this Plan, then Judgment Creditors shall have the immediate right to file, and serve upon the Debtor and its counsel, a certification of default ("Certification") stating the basis for the default. Upon the filing of Certification, any stay or injunction pursuant to the Bankruptcy Code and/or Plan, shall terminate and the Judgment Creditors may immediately thereafter be permitted to pursue all rights and remedies under state law against the Debtor.

**Unsecured Obligation**. There are no unsecured claims.

**1.7.** **Current and Historical Financial Conditions** The Property at the commencement of the Bankruptcy case was unoccupied and remains unoccupied. Residential leases were possible, but that usage would not create sufficient funds to maintain the mortgage, maintain the property, cure mortgage arrears, and generate funds permitting a meaningful distribution to the partially secured Judgment Creditors. Monthly operating reports are required. Said initial reports are expected to show little or no income. Reports have

7

been filed through the month of August 2022. As the Property gets marketed and the health care partnership for short terms stays takes shape it is expected that the Property will generate $3,150 per month. The Second Amended Plan repayment terms to Class 2 creditors is tiered over time based on projections and the Cyndescope repayment terms.

## 1.8 Administrative Expenses

As of the Chapter 11 case there will be quarterly fees. Debtor will maintain the required quarterly fees based upon the reports and that they will be current upon confirmation. Administrative Priority Attorney fees to Gellert Scali Busenkell and Brown will be paid in full as court approved and upon confirmation unless otherwise agreed. The budget contains an agreed upon payment plan for any approved attorney fees.

## 1.9 Events Leading to the Filing of the Bankruptcy Case.

The Debtor was unable to survive the pandemic and obtain rental income on the Property at 1203 Melville Street, Philadelphia, Pa. It also lost other property prior to the Bankruptcy Case to foreclosure leaving this single asset. Debtor was pressed with a Sheriff Sale of the Property that was scheduled for May 3, 2022, which was stayed or adjourned due to the bankruptcy filing. Debtor can sustain this Plan based upon the intended use of the Property which will maximize income and be in the best interest of all creditors and the managing members.

## 1.10 Significant Events During the Bankruptcy Case.

A Motion for Relief was denied with conditions imposed for the stay to remain in effect pursuant to the Order dated September 26, 2022, which is incorporated herein by

reference.

## ARTICLE 2
## SECOND AMENDED PLAN

Debtor's Second Amended Plan must describe how its Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment. For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Code, the Second Amended Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Second Amended Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Second Amended Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. If the Second Amended Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Second Amended Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Second Amended Plan, and only Creditors holding Allowed Claims may vote. A class accepts the Second Amended Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Second Amended Plan. Also, a class of Equity Interest holders accepts the Second Amended Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Second Amended Plan.

### 2.1. Unclassified Claims.

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Second Amended Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Second Amended Plan does not place the following Claims in any class:

A.      Administrative Expenses

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date

2805366.1/56081

must be paid in accordance with this Second Amended Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1. Administrative Expenses include any post-petition fees and expenses allowed to professionals, including the allowed claim of the Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the Chapter 11 cases. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Second Amended Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Administrative Tax Claim | NONE | N/A |
| Professional fees, as approved by the Bankruptcy Court | $20,000 | After Bankruptcy Court approval& Draw from Escrow-Payment through the Plan at$150 to $250 per month per the budget until satisfied |
| Clerk's Office fees | NONE | Paid in full upon the filing |
| Other Administrative Expenses Quarterly Fees | Per guidelines | Quarterly as required. Debtor to be current upon confirmation |
| TOTAL | $20,000 | |

B. Priority Tax Claims.

10

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

| Name of Taxing Authority and Type of Tax | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| Not Applicable | None | Not Applicable | Not Applicable |

## 2.2 **Classes of Claims and Equity Interests.**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Second Amended Plan:

A. Classes of Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim. In addition, certain claims secured only by the debtor's principal residence, may require different treatment pursuant to § 1190(3) of the Code as set forth below, if applicable.

The following chart lists all classes containing the Debtor's secured prepetition Claims and their proposed treatment under the Plan:

11

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---------|-------------|----------------------|------------|-----------|
| 1 | US BANK NATIONAL ASSOCIATION COLLATERAL 1203 S. MELVILLE STREET PHILADELPHIA PA 19143<br><br>Allowed Secured Amount = $288,372.89 Claim #4<br><br>Priority of lien =FIRST Pre-pet. arrearage =$75,660.75 | NO | NO | Direct regular monthly mortgage payments of ($2,182.72) with interest at the rate of 10.24 percent at the time of filing with adjustments per the terms of the mortgage, plus monthly installments of $1/60^{th}$ of the mortgage arrearage ($75,660.75) paid at $1,261.01 per month over 60 months commencing 30 days after confirmation |

2805366.1/56081

| 2 | MONIQUE MOISE, RASHEEDA LAWLER and SHADONNA CHARLESTON | NO | YES | Direct monthly payments prorated among the 3 Judgment Creditors totaling $1,500 per month   (Moise $945, Charleston $300 and Lawler $255) for 16 months starting November,2022 ($24,000) and $4,088.50 per month for 47 months (Moise 2,575.76, Charleston $817.70 and Lawler $695.04) = $192,136.00 which includes full judgment plus 6% statutory interest and legal fees. Post-petition legal fees of $12,264 shall be paid in equal monthly installments of $4,088.50 in months 61-63 of the Second Amended Plan.  The judgment lien of Judgment Creditors upon the Property will remain until the Class 2 claims are paid in full and marked satisfied upon payment in full. Judgment Creditors are entitled to the remedies provided in this Plan Relief is granted for non-payment and after notice as required herein, relief will allow the creditors to pursue all state court remedies against the debtor and co-defendants. |
|---|---|---|---|---|

13

B. Class[es]of General Unsecured Claims

General unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Second Amended Plan's proposed treatment of Class[es] through, which contain general unsecured Claims against the Debtor:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 3 | Equity Interest holders | N/A | Retain their membership and percentages. |

## 2.3. Estimated Number and Amount of Claims Objections.

Except as to the Class 1 and Class 2 Claims specified in this Plan, which are Allowed Claims, the Debtor may object to the amount or validity of any Claim within 60 days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Second Amended Plan. When a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Second Amended Plan. Since there are no claims, debtor cannot anticipate whether or not a claims objection will be required.

## 2.4. Treatment of Executory Contracts and Unexpired Leases.

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. There are no executory contracts.

## 2.5. Means for Implementation of the Amended Plan.

As stated, the LLC intends to fund the Second Amended Plan from income from (i) the Property with short term leases and short-term related stays with medical facilities or providers in the area and (ii) the loan repayments from Cyndescope, with website advertising as mentioned herein. The failure of Debtor to obtain the projected payments from the Property or from Cyndescope shall not excuse the performance of Debtor under this Plan.

Except for the liens preserved in this Plan, on Confirmation of the Second Amended

Plan, all property of the Debtor, tangible and intangible, including, without limitation, licenses, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equitable Interests except as provided in the Second Amended Plan, to the Debtor. The Debtor expects to have sufficient cash on hand to make the payments required on the Effective Date.

### 2.6. Payments.

If the Second Amended Plan is confirmed under §1191(a), payments to Creditors provided for in the Plan will be made by the Debtor pursuant to §1194(a).

If the Second Amended Plan is confirmed under section § 1191(b), except as otherwise provided in the Plan or in the order confirming the Plan, the Debtor shall make all Plan payments to creditors under the Second Amended Plan.

### 2.7. Post-Confirmation Management.

Debtor shall remain as Debtor in Possession with managing partners Dennis Dicker and Kathryn Anderson.

### 2.8. Tax Consequences of the Second Amended Plan.

*Creditors Concerned with How the Second Amended Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

### 2.9. Projections in Support of Debtor's Ability to Make Payments Under the Proposed Second Amended Plan

Projections are attached

## ARTICLE 3
## FEASIBILITY OF
## SECOND AMENDED
## PLAN

The Bankruptcy Court must find that confirmation of the Second Amended Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

2805366.1/56081

**3.1.** **Ability to Initially Fund Second Amended Plan**.

The Debtor believes that the Debtor will have enough cash on hand on the Effective Date of the Second Amended Plan to pay all the Claims and expenses that are entitled to be paid on that date.

**3.2. Ability to Make Future Second Amended Plan Payments And Operate Without Further Reorganization**.

The Debtor has provided projected financial information. Those projections are listed in Exhibit A

The Debtor's financial projections show the feasibility of the Second Amended Plan. The final Second Amended Plan payment is expected to be paid in December, 2027.

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.**

## ARTICLE 4
## LIQUIDATION ANALYSIS.

To confirm the Second Amended Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation.

## ARTICLE 5
## DISCHARGE

**5.1. Discharge. If the Second Amended Plan is confirmed under § 1191(a),** on the Confirmation Date of this Second Amended Plan, the Debtor will be discharged from any debt that arose before confirmation of this Second Amended Plan, subject to the occurrence of the Effective Date and the rights of claim holders upon default in performance under the Plan, to the extent specified in § 1141(d) of the Bankruptcy Code; or

**If the Second Amended Plan is confirmed under § 1191(b),** as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this

title and provided for in this Second Amended Plan, except any debt—

(1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or

(2) if applicable, of the kind specified in section 523(a) of this title. No Discharge. In accordance with § 1141(d)(3) of the Bankruptcy Code, the Debtor will not receive any discharge of debt in this bankruptcy case.

## ARTICLE 6
## GENERAL PROVISIONS.

### 6.1. Title to Assets.

If a plan is confirmed under § 1191(a), except as otherwise provided in the Second Amended Plan or in the order confirming the Second Amended Plan, (i) confirmation of the Second Amended Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Second Amended Plan, the property dealt with by the Second Amended Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

If an Second Amended Plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Second Amended Plan, the Debtor shall remain in possession of all property of the estate.

### 6.2. Binding Effect.

If the Second Amended Plan is confirmed, the provisions of the Second Amended Plan will bind the Debtor and all Creditors, whether or not they accept the Second Amended Plan. The rights and obligations of any entity named or referred to in this Second Amended Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

### 6.3. Severability.

If any provision in this Second Amended Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of

17

any other provision of this Second Amended Plan.

### 6.4. **Retention of Jurisdiction by the Bankruptcy Court.**

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Second Amended Plan and to resolve any disputes arising from implementation of the Second Amended Plan.
(ii) to rule on any modification of the Second Amended Plan proposed under section 1193;
(iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses.
(iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

### 6.5. **Captions.**

The headings contained in this Second Amended Plan are for convenience of reference only and do not affect the meaning or interpretation of this Second Amended Plan.

### 6.6. **Modification of Second Amended Plan.**

The Debtor may modify the Second Amended Plan at any time before confirmation of the Plan pursuant to § 1193(a). However, the Bankruptcy Court may require additional items including revoting on the Second Amended Plan.

If the Second Amended Plan is confirmed under Section 1191(a), the Debtor may also seek to modify the Second Amended Plan at any time after confirmation only if (1) the Second Amended Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Second Amended Plan is confirmed under Section 1191(b), the Debtor may seek to modify the Second Amended Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years fixed by the court *and* (2) the Bankruptcy Court authorizes the

18

proposed modifications after notice and a hearing.

**6.7. <u>Final Decree.</u>**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Second Amended Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

**ARTICLE 7**
**<u>ATTACHMENTS</u>**

Financial Projections are attached as Exhibit A

Cyndescope Contract is attached as Exhibit B

**ARTICLE 8**
**<u>FREQUENTLY ASKED QUESTIONS</u>**

**What Is the Debtor Attempting to Do in Chapter 11?** Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to restructure the claims held against it. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11. The plan is the legal document which sets forth the manner and the means by which holders of claims against a debtor will be treated.

**Why Am I Receiving This Second Amended Plan?** In order to confirm a plan of reorganization, the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Plan. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

**How Do I Determine Which Class I Am In?** To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtor. If you do not have any collateral, your claim is unsecured. The Table of Contents will direct you to the treatment provided to the class in which you are grouped. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, what is the

19

size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed. [Paragraph/Section] lists all classes of claimants and their types of claims.

**Why Is Confirmation of an Second Amended Plan of Reorganization Important?** Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its creditors are bound by the terms of the Plan. If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while the Debtor remains in bankruptcy.

**What Is Necessary to Confirm an Second Amended Plan of Reorganization?** Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two-thirds in total dollar amount and a majority in number of claims actually voting in each voting class. If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements are shown including that the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

**Am I Entitled to Vote on the Second Amended Plan?** Any creditor of the Debtor whose claim is IMPAIRED under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**How Do I Determine if I Am an Impaired Class?** Section 2 of the Plan identifies the classes of creditors whose claims are impaired. If your claim is impaired, your vote will be considered by the Bankruptcy Court.

**When Is the Deadline by Which I Need to Return My Ballot?** The Plan is being distributed to all claim holders for their review, consideration and approval. The deadline by which ballots must be returned is **TBD.** Ballots should be mailed to the following address: Gellert Scali Busenkell & Brown; attention Michael Cataldo, Esquire 1201 N. Orange Street, Suite 300, Wilmington DE 19805.

**How Do I Determine When and How Much I Will Be Paid?** The Debtor has provided both written and financial summaries of what it anticipates each class of creditors will receive under the Plan.

# ARTICLE 9
## DEFINITIONS

**9.1.** The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Second Amended Plan. The definitions that follow that are found in the Code are for convenience of reference only and are superseded by the definitions found in the Code.

**9.2.** **Administrative Claimant**: Any person entitled to payment of an Administration Expense.

**9.3.** **Administrative Convenience Class:** A class consisting of every unsecured claim that is less than or reduced to an amount that the Bankruptcy Court approves as reasonable and necessary for administrative convenience.

**9.4.** **Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

**9.5** **Administrative Tax Claim**: Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

**9.6.** **Allowed Claim**: Any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order, or (iii) is recognized as an Allowed Claim by the terms of the Plan.

**9.7.** **Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.8.** **Allowed Secured Claim**: Allowed Secured Claims are claims secured by

property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.

**9.9. Allowed Unsecured Claim**: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.10. Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**9.11. Bankruptcy Court**: The United States Bankruptcy Court for the District of Delaware.

**9.12. Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure.

**9.13. Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**9.14. Chapter 11 Case**: This case under chapter 11 of the Bankruptcy Code in which Financial Investments and Real Estate LLC is the Debtor-in-Possession.

**9.15. Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**9.16. Class:** A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**9.17. Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

**9.18. Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**9.19. Confirmation Hearing**: The hearing to be held on **TBD**, 2022 to consider confirmation of the Plan.

**9.20.    Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto confirming the Second Amended Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**9.21. Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**9.22. Debtor** and **Debtor-in-Possession**: Debtor, the debtor-in-possession in this Chapter 11 Case.

**9.23. Disputed Claim:** Any claim against the Debtor pursuant to Section 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

**9.24.    Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

**9.25. Effective Date**: Pursuant to E.D.PA, the effective date of a chapter 11 plan is 30 days after entry of the order confirming the plan unless the plan or confirmation order provides otherwise.

**9.26. Equity Interest**: An ownership interest in the Debtor.

**9.27.    Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**9.28.    Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**9.29.    IRC**: The Internal Revenue Code

**9.30.    Petition Date**: May 3, 2022, the date the chapter 11 petition for relief was filed

**9.31.    Plan or Second Amended Plan**: This Plan, either in its present form as a Second Amended Chapter 11 Plan of Reorganization or as it may be altered, amended, or modified from time to time.

2805366.1/56081

**9.32.    Priority Tax Claim**: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**9.33.    Reorganized Debtor**: The Debtor after the Effective Date.

**9.34.    Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**9.35.    Secured Creditor**: Any creditor that holds a Claim that is secured by property of the Debtor.

**9.36.    Trustee**: The trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

**9.37.    Unsecured Creditor**: Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim.

Date:   November 22, 2022                    Respectfully submitted,

GELLERT SCALI BUSENKELL & BROWN LLC

*/s/ Michael A. Cataldo,*
Michael A Cataldo (PA49431)
1628 JFK Blvd, Suite 1901
Philadelphia, Pa 19103
(215) 238-0015
mcataldo@gsbblaw.com

24